Good morning, Your Honors. Mary Lehman for Appellant La Jolla Spa MD, peering through its President and CEO, Diane York. I'd like to reserve three minutes for rebuttal. This diversity action is against Travelers Insurance. Below the jury found my client had no covered loss. It relied on improper extrinsic evidence that contradicted the clear terms of a marital settlement agreement, which we sometimes refer to as an MSA, and relying on such, the jury found Dr. Goldman, my client's ex-husband, had the right to take essentially all the equipment from the surgical suite from my client's business. We contend there's one issue on appeal. That issue is that error is a matter of law to admit the parole or extrinsic evidence that contradicted that term of the MSA. That term of the MSA reads, Dr. Goldman could take equipment from the second floor of La Jolla Spa MD except for all equipment in the surgical suite, which includes lights, anesthesia equipment, and other fixtures attached to the building. Despite several objections and a motion in limine by Ms. York, the district court allowed that extrinsic evidence, including e-mails, that contradict the plain meaning of that provision of the MSA. But I don't understand why they contradict the plain meaning, and why there isn't some ambiguity in this provision of the settlement agreement. Under the parole evidence rule, it's a substantive rule, so we look to California law, and California law is briefed as the Green case and CCP 1856. And it's a question of law for the trial court whether, in light of the proffered evidence, the contract is reasonably susceptible to that interpretation. It seems like it's reasonably, to me when I read it, it seems like it's reasonably susceptible to the interpretation that the insurance company offered. Okay, so the provision says. We're talking about including in this context. Okay, a key point in this case is the word all. In other, there are some very few cases where including can be a term of limitation. But there is no case where it modifies the word all. Here we had could take the equipment except for all the equipment in the surgical suite, which includes lights, anesthesia equipment. And the law is clear, and dictionaries confirm that the normal everyday usage, which is what this court must interpret contracts, is the plain everyday usage, that when you say all X, including Y and Z, is a term of inclusion versus exclusion. Traveler cites no California case where including is a term of limitation. The one case it cites makes a passing reference to sometimes including can be a term of limitation. But it's usually only when this word only includes or sometimes when it's as a definition. So when you're, instead of saying is defined as, you can say including. But that is not this case. And precisely because of the word all, all equipment including X, Y, and Z. And the important thing, too, is that it's not just is it reasonably susceptible, but does this extrinsic parole evidence make this interpretation reasonable. And there is nothing in those e-mails that shows that this interpretation is reasonable. There's nothing about those e-mails that is based on this interpretation. Nothing says including was a term of limitation. Essentially what the trial judge did here is like, oh, well, it looks like there's a contrary agreement, contrary to the MSA, post-MSA, and then that's sufficient. But that is not the test. It's not because we can't open up the world to say every time there's a subsequent agreement between contentious family law attorneys, but that's how it changes a final MSA. But their argument is not that these were subsequent agreements. Their argument is that these e-mails, which were drafted after the marital settlement agreement, reflect what the parties agreed to at the time. Well, again, that's not the standard. It's not what the agreement was at the time. The standard is what about these e-mails shows the interpretation of this particular phrase. Counsel, so what about this exchange at the very end? Your analysis in your second paragraph is right as far as it goes. The only issue I think we have is the surgical instruments, which are part of the operating rooms, and which Mitch, I think it means Dr. Goldman, right, does not use in his terminology practice response. If you can point to anything in the judgment that says Mitch is leaving the surgical instruments as it states we are leaving the OR lighting tables and anesthesia equipment, I will put it to you. That language you need or wish existed, however, is not in there. You're right. There's nothing about the provisions are talking about instruments, and so they're not talking about equipment. The phrase in the MSA that we're talking about is equipment. All equipment is to be left. Well, it doesn't just say all equipment is to be left. I know you know this. You've probably read this 9 million times, and I've only read it 2 million times. But we've been over and over this sentence, and it strikes me as a mouthful. It's got a lot of clauses and a lot of exceptions and a lot of includings. Again, I'd like to focus, again, on the word all. And in any case he can take the equipment on the second floor. Yes. Including but not limited to, right? And then it says except for all equipment in the surgical suites, and then it says which includes the lights and anesthesia equipment. Right. So does that last clause, which includes the lights and anesthesia equipment, does that modify the middle clause or the first clause? Well, the anesthesia equipment is definitely in the surgical suite, for one, as a matter of what? On the record, and I would say judicial notice, but I won't say that. I hope you're not going to say that. Okay, you're right. Okay, the anesthesia equipment. But, again, notice that the all doesn't say all equipment on the second floor. It says for all equipment in the surgical suites. So how can all be equivalent to three things? That's the illogical interpretation. We don't know what was in the surgical suites. Pardon me? We don't know what was in the surgical suites. Well, we do when it was in the surgical suites. We don't know what was in the surgical suites. It was in the record. Counsel? Okay. What's your strongest argument that this is not susceptible to the interpretation that travelers gave it? Because that's what I think what you have to show in order to convince me that the judge should not have admitted this evidence, right? Okay. I think the word all, and, again, there's no case that says that when the premise phrase has the word all, that including is a limitation. In fact, there's two cases that we cite in our brief that says, essentially, all means all, and that was the Winnick case and the Edwards case. Edwards case says any and all claims cannot be interpreted to mean anything less than any and all claims. So it, again, is the word all that completely throws out the interpretation that including could be a term of limitation. And, again, going to the rule, under California law, and we've attached the statutes and federal law too, I believe, that the interpretation of contracts and statutes has to be in the ordinary and popular sense. And if I tell my daughter or son that they have to clean the kitchen, including scouring the sink, they better clean the kitchen. It doesn't mean just scouring the sink. Could you just explain to me, to put this into context, this surgical suite, what was it? I mean, what was in there? The surgical suite was a large section of the second floor. It was locked off. It had two operating rooms. It had a recovery room. It had a ---- When you say it had a recovery room, what was in the recovery room? Beds? Beds were some, yes, and medical equipment. I believe there was a crash cart and medicines and oxygen and IV poles. And it was testified to in the record. And there's an attachment to the, I believe, the NLMNE motion. So when they walked away from this, after having signed this agreement, and I'm not going to just put aside the e-mails, what was the doctor supposed to have done? On the second floor, and the record shows this, is that there were a bunch of examination and consulting rooms around the second floor. And that was primarily where Dr. Goldman worked as a dermatologist and using lasers and stuff. And he had his equipment in there, the dermatological equipment and instruments that was discussed, and he had a right to that and even the laser equipment. But as the testimony in the court showed, that the whole operating room, the surgical suite, was the key element of this business and of my clients. And it was very important that she keep this. It was her business, which she was awarded as part of the MSA. Okay. I'm going to stop you. Okay.  Okay, thank you. Thank you. Counsel, before we hear your argument, we need to take a short 10-minute recess. Thank you. Go ahead. Thank you. Good morning. Aaron Agnes for Travelers' Property Casualty Company of America. Before we took that short intermission, we were talking about whether or not the emails provide a meaning to which the agreement is reasonably susceptible. And I think it does for multiple reasons, both just looking at the marital settlement agreement itself and then also in looking at what actually happened. So first focusing on the marital settlement agreement itself, as was already discussed, the language in the subject sentence starts off with including but not limited to and then provides the language after that, which includes. It doesn't again say including but not limited to. And as both counsel admitted just a moment ago and the case law and dictionary definitions that we provided, includes can be a term of limitation. Also, the next sentence that immediately follows that sentence says that in the event petitioner, who in this case was Ms. York, desires to obtain and or retain laser equipment from any of the vendors of the spa, she is free to deal directly with such lenders. And the clear inference from that is that unless there's contact with these vendors, Dr. Goldman will be taking the laser equipment. And so if all equipment meant everything and it couldn't mean that he could take anything in connection with his dermatology practice, there would be no need for another sentence about the laser equipment and the fact that Ms. York should be contacting the vendors if she wishes to retain them. Along those lines as well, what came in the record is that Dr. Goldman was a renowned dermatologist and he had two medical entities that were servicing the second floor. Basically, these entities were the tenants of the second floor. And the surgical center was a mouthful, but the acronym is CVSE, and that was the name of Dr. Goldman's company that ran the surgical center. Now, as part of this same marital settlement agreement, in paragraph 9, which is in the excerpts of record at page 346, Dr. Goldman was awarded that surgical center and all of its assets. If you're to read the merits, you can't read the- But counsel, both parties had reasons to want this equipment, right? They both had use for the equipment. Well, but one doctor was actually using it and it was part of his dermatology practice. Okay, but the testimony was-I'm not sure how much this helps you. I'm not trying to be argumentative. But the testimony was that she had somebody lined up, a tenant, to come in to- and this was a moneymaking center, right? So they both had reason to. That's true, Your Honor. Okay. And so then when you look at what happened beyond just the terms of the agreement, all the evidence that came in supported the fact that Dr. Goldman took what he was entitled to take, and that being that he left behind what followed the words, which includes the itemized list. Can I ask a question about this? When the trial judge made this evidentiary ruling, there was other evidence, circumstantial evidence, including, I think, travelers argued that the parties had agreed to an arbitrator in case there was problems allocating, and that that provision had not been invoked by petitioner. Yes. Was that fairly considered by the trial court at the time that this evidentiary ruling was made about these e-mails? No, because the only argument at that time was based on the parole evidence. That was the sole objection made at that time. And with respect to that, these were e-mails subsequent to the formation of the Merrill Settlement Agreement. Right. And actually in the new trial motion that was filed by La Jolla Spa, they said that these were not actually parole evidence. I'm familiar with that. And so, but to your Honor's point, Judge Christian, that the course of conduct that also supported that was the fact that the Merrill Settlement Agreement provided for an arbitrator, Hildy Fenton, to resolve any disputes. All that testimony came into the record and that no one actually went to Hildy Fenton, suggesting there was actually a dispute. The Merrill Settlement Agreement also provided for the divorce court to retain jurisdiction and iron out any issues that the parties might have, and there was a trial set before the divorce court, but it was dropped. The jury, I think, in the special verdict form answered no to the first question, which was basically whether there was a covered loss. I'm paraphrasing, but is that right? Yes, whether there was a loss covered under the policy. Okay. Was there ever a spreadsheet prepared by or endorsed by the petitioner setting out what she thought was wrongfully taken that was not disavowed? No. In fact, that was part of the moving target that's outlined over the course of many pages in our brief, but it was showing that when the claim was submitted to travelers, it had false mess representations in it. It was actually another doctor's equipment, and there was a separate lawsuit suggesting that that other doctor also stole that equipment. And then there were future inventories that were all also disavowed, and the credibility of Ms. York, I think, at trial, the same thing happened to that. I'm not clear on the chronology. I think Ms. York initiated a file a complaint, and I don't know if that's a capital C complaint, but anyway, made the allegation that the entity, the person or firm that represented her, that she thought was responsible for drafting this sentence had drafted a sentence that was vague. Correct. Okay. Did the trial judge know that at the time, or did that happen later? I believe that happened later, Your Honor. So that wouldn't have been part of the calculation? Correct. All right. Also what happened later, Your Honor, is that Ms. York's attorney at the time, who was Douglas Stote, who was one of the individuals who signed the marital settlement agreement, he testified, and this is in the excerpts of record at page 154. He said, quote, Otherwise, why have a dermatology practice? End quote. And what Dr. Goldman had testified as well was that what he took, he uses in connection with his dermatology practice. And that practice, when in the La Jolla Spa building, was CVSE, which ran the surgical center. As far as if the Court has any questions, I mean, I think the only issue that was really discussed was reasonably susceptible. The district court was never asked to make a determination to interpret this, and so this is over the denial of the Rule 59 motion, and we submit that Judge Carroll did not abuse his discretion when he denied finding that the jury verdict was not against the clear weight of the evidence. Okay. Thank you. Thank you, Your Honors. Just really quickly, there was a question about what was in the surgical suites and what was taken and the extent of it. These are trial exhibits. They're in the excerpts of record, and you can compare. This is trial exhibit, defendant's exhibit E. This is after, and this is plaintiff's exhibit 5. So if you compare the before and after, there's literally millions of dollars that was at issue. I think the important thing to realize is the big picture of what's going on here, is here you have a marital settlement agreement, the final determination in a lengthy and contentious and expensive divorce, and the parties agreed, this is finally how we're going to resolve everything. And then months later, you have family law divorce attorneys, you know, posturing, shitting from the hip and arguing and trying to get a little bit more for their clients, and this happens all the time. And then what's happened is now we're throwing out this negotiated, signed, final stipulated judgment because of emails that it doesn't say specifically, this was our agreement that including means only. There were lots of emails. Those emails started two days after the MSA was signed, and they ended two days before the unannounced move out, which probably happened because of all this dispute. So there's no agreement. At most, perhaps there was, you know, some sloppy responses to this barrage of emails and some miscommunications. They're talking about equipment versus instruments. But what is at stake is opening up every MSA and every final stipulated judgment because subsequently the divorce attorneys send emails, and if someone's sloppy, then it all blows up. Okay. Our next.
judges: Pregerson, Paez, Christen